At the hearing before the Full Commission, the parties orally stipulated that Exhibit 7, pages 34 and 35, and Exhibit 8, pages 1, 2, and 3, which were attached to defendants' brief, are properly included in the record.
Plaintiff's Motion for the Taking of Additional Evidence Due to Additional Medical Treatment is hereby DENIED.
***********
Upon review of the competent evidence of record, and finding no good grounds to receive further evidence or rehear the parties or their representatives, the Full Commission, upon reconsideration of the evidence, affirms the Opinion and Award of the Deputy Commissioner.
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties at the hearing as:
 STIPULATIONS
1. All stipulations contained in the Pre-Trial Agreement are received into evidence, as follows:
a. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
b. Transportation Insurance Company was the carrier on the risk at the time of the 19 May 1994 injury.
c. On 19 May 1994, plaintiff was employed by defendant-employer as an electrician.
d. Plaintiff sustained an injury by accident arising out of and in the course of his employment on 19 May 1994.
e. On 19 May 1994, plaintiff's average weekly wage was $360 and his compensation rate was $240.00.
f. On 20 April 1994, a hearing in this matter was held before Deputy Commissioner Douglas E. Berger. Deputy Commissioner Berger held that plaintiff's refusal to accept the light duty job on 7 October 1994 offered by defendant was not justified. He further held that plaintiff is entitled to receive medical treatment directed at reducing his chronic pain.
2. An index of medical records marked as stipulated exhibit 2 was received into evidence.
***********
Based upon all of the competent evidence adduced from the record, the Full Commission makes the following additional:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was a thirty-two year old male with a high school degree and one semester of college.
2. On 29 September 1995, Deputy Commissioner Berger filed an Opinion and Award in this case ordering defendants to pay for an inpatient chronic pain management program on behalf of plaintiff. This order was based upon the recommendation of Glenn McCain, M.D., who diagnosed plaintiff with chronic pain syndrome. At the time of his deposition, Dr. McCain was unable to classify the syndrome as either fybromyalgia or myofascial pain. In a letter dated 15 December 1994, Dr. McCain recommended that plaintiff "be afforded the opportunity of enrollment in a rehabilitation program aimed at restoring his function." He also advised that this program "be dovetailed with an attempt at vocational rehabilitation with a staged return to work if possible."
3. Upon receiving Deputy Commissioner Berger's 29 September 1995 decision, defendants initially provided plaintiff an opportunity to attend a three-week outpatient pain management program at Cape Fear Valley Medical Center. The program was comprised of five, seven hour days per week of physical therapy, exercise, biofeedback, vocational training, vocational rehabilitation, therapeutic recreation, occupational and group therapy, stress and relaxation training, and medication management. The total cost of this outpatient program would have been $4,500.00. Plaintiff refused to participate in this outpatient program because it did not involve inpatient treatment as ordered by Deputy Commissioner Berger. An inpatient treatment program can cost up to $30,000.00.
4. Following a telephone conference between Deputy Commissioner Berger and counsel for both parties, the parties agreed that plaintiff should undergo a chronic pain management program. Dr. McCain recommended a program aimed at functional restoration. On 8 July 1996, plaintiff began a program at Bowman Gray Baptist Hospital Spine Center which included educational classes that dealt with goal setting, the importance of work, and general coping skills strategies to manage plaintiff's chronic pain.
5. On 26 July 1996, Dr. Walter Davis, Medical Director of the Functional Restoration Program, discharged plaintiff from the Bowman Gray Baptist Hospital Spine Center program and released plaintiff to return to work with a medium physical capacity evaluation. Dr. Davis restricted plaintiff to an occasional floor to waist lifting up to 44 pounds, waist to shoulder lifting up to 41 pounds, carrying up to 39 pounds, and pulling up to 43 pounds.
6. On 19 August 1996, Dr. McCain reexamined plaintiff following a request by Mr. John Betts, an attorney for plaintiff. Based on his two examinations of plaintiff, Dr. McCain opined that plaintiff has fybromyalgia and is unable to return to work in any occupation. In a letter dated 19 August 1996, Dr. McCain reported to Mr. Betts that he would not have recommended a functional restoration program for plaintiff because there is no available medical evidence that this kind of approach works for fibromyalgia.
7. Plaintiff has not undergone a change in condition since the first examination conducted by Dr. McCain in 1994. Plaintiff's pain complaints in 1996, when he was reexamined by Dr. McCain, remained the same as those expressed by plaintiff initially in 1994. The only change has been the change in Dr. McCain's diagnosis from chronic pain syndrome to fibromyalgia.
8. Plaintiff is exaggerating the extent of the pain that he is experiencing, and is engaging in symptom magnification based upon his response to the legal system, as the deputy commissioner found. Scott Sanitate, M.D., a physiatrist with CRA Spine 
Physical Medicine Center, performed a series of tests that demonstrated plaintiff's reports of pain were not a reliable source for determining the extent of his injury. Dr. Sanitate found that plaintiff did not suffer from fibromyalgia.
9. Dr. Sanitate directed plaintiff to undergo a log rolling test to determine whether plaintiff's pain was coming from his hips. While performing this test, plaintiff complained of lower back pain. There is no anatomical relationship between the performance of the log rolling test and the occurrence of low back pain.
10. Dr. Sanitate directed plaintiff to undergo a straight leg raising test along with a plantar flexion of the right toe. While performing the plantar flexion of his big toe, plaintiff complained of an increase in lumbar pain. There is no anatomical relationship between the performance of this test and the occurrence of lumbar pain.
11. Dr. Sanitate directed plaintiff to undergo a voluntary range of motion by flexing forward to attempt to touch his toes with his knees extended, then extending backwards and then bending to each side laterally. Plaintiff grimaced while performing these voluntary motions. There is no anatomical relationship between the performance of this test and the occurrence of lumbar pain.
12. Dr. Sanitate performed a series of tests on plaintiff's right knee. During these tests, plaintiff complained of right knee pain. Despite these complaints of right knee pain and purportedly using a cane, there was no atrophy, edema, or asymmetry in plaintiff's right leg muscles as compared to the muscles in his left leg. Although plaintiff used a case when he presented to his physicians over a three-year period, he is probably using his right leg more than he stated to his physicians, as the deputy commissioner found.
13. When Dr. Sanitate palpated plaintiff's truncal area, plaintiff reported diffuse tenderness throughout his whole trunk. There is no anatomical relationship between the performance of this test and the occurrence of pain throughout plaintiff's entire truncal region.
14. As of 26 July 1996, plaintiff had reached maximum medical improvement with regard to his compensable back and arm injuries.
15. Plaintiff does not have fibromyalgia. The Full Commission gives greater weight to the opinions rendered by Dr. Davis and Dr. Sanitate as opposed to the opinions rendered by Dr. McCain. The inconsistencies observed by Dr. Sanitate show that plaintiff's reports of pain are not a reliable source upon which a diagnosis should be based. Furthermore, defendants expended resources on plaintiff to undergo a pain management program that emphasized functional restoration, based upon a recommendation by Dr. McCain, who later contended that he never recommended such a program.
16. Plaintiff is intentionally exaggerating the extent of the pain that he is experiencing. Plaintiff is physically able to return to work with a medium physical demand classification with occasional floor to waist lifting up to 44 pounds, waist to shoulder lifting up to 41 pounds, carrying up to 39 pounds, and pulling up to 43 pounds.
17. As a result of the 20 May 1994 compensable injury by accident, plaintiff has sustained a three percent permanent partial disability to his back.
18. Plaintiff applied for work with about a dozen businesses in an eight-day span from 13 August 1996 to 20 August 1996. He also contends that he attempted to be rehired by defendant-employer. Plaintiff has not conducted a reasonable but unsuccessful job search since being released by Bowman Gray Baptist Hospital Spine Center on 31 July 1996.
19. Conservative care that includes non-addictive pain medications is reasonably necessary to help plaintiff relieve pain in the future.
***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff did not appeal Deputy Commissioner Berger's Opinion and Award, filed 29 September 1995, affirming the Form 24 Application to Terminate or Suspend Payment of Compensation decision, which was filed 23 November 1994. Plaintiff has the burden of proving that he has been disabled for any time period following this termination of benefits on 7 October 1994. Plaintiff has failed to show by the greater weight of the evidence that he was disabled during the time period beginning 7 October 1994 to the date of the hearing before the Deputy Commissioner, with the exception of the time period that plaintiff was in the program at the Bowman Gray Baptist Hospital Spine Center. G.S. 97-29.
2. Plaintiff is entitled to receive temporary total disability compensation in the amount of $240.00 per week for the time period beginning 8 July 1996 through 31 July 1996. G.S. 97-29.
3. Plaintiff is entitled to receive permanent partial disability compensation in the amount of $240.00 per week for nine weeks for the permanent partial disability to his back. G.S.97-31(23).
***********
Based upon the foregoing stipulations, findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay temporary total disability compensation at a rate of $240.00 for the time period beginning 8 July 1996 through 31 July 1996. This amount has accrued and shall be paid in a lump sum, subject to the attorney's fee approved below.
2. Defendants shall pay permanent partial disability compensation at a rate of $240.00 for nine weeks for the permanent partial disability to plaintiff's back.
3. Defendants shall pay for conservative treatment for plaintiff that is limited to the use of non-addictive pain medications.
4. Plaintiff's request that Dr. Glen McCain be approved as his treating physician is hereby DENIED.
5. A reasonable attorney's fee in the amount of twenty-five percent of the compensation due plaintiff under paragraphs 1 and 2 is approved for plaintiff's counsel and shall be paid as follows: twenty-five percent of the lump sum due plaintiff shall be deducted from that sum and paid directly to plaintiff's counsel.
6. Defendants shall pay the costs.
S/_____________ RENEE C. RIGGSBEE COMMISSIONER
CONCURRING:
S/_____________ DIANNE C. SELLERS COMMISSIONER
S/_____________ THOMAS J. BOLCH COMMISSIONER